| | |
|---|---|
| 1 | BRETT E. LEWIS (*pro hac vice* application forthcoming) |
| | LEWIS & LIN, LLC |
| 2 | 45 Main Street, Suite 608 |
| | Brooklyn, NY 11201 |
| 3 | Telephone: (718) 243-9323 |
| | Facsimile: (718) 243-9326 |
| 4 | Email: brett@iLawco.com |

Dylan Ruga (SBN 235969)
Ji-In Lee Houck (SBN 280088)
STALWART LAW GROUP
1100 Glendon Ave., 17th Floor
Los Angeles, CA 90024
Telephone:   (310) 954-2000
Email:  dylan@stalwartlaw.com
Email:  jiin@stalwartlaw.com

Attorneys for Plaintiff
INTERNATIONAL BRAVO.COM, INC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL BRAVO.COM, INC., a Delaware corporation,<br><br>          Plaintiff,<br><br>     vs.<br><br>RAVINDRA KUMAR LAHOTI, an individual, and DOES 1 through 100, inclusive,<br><br>          Defendants. | Case No.: 8:17-cv-01614<br><br>**COMPLAINT FOR:**<br><br>**(1) CONVERSION;**<br>**(2) BREACH OF FIDUCIARY DUTY;**<br>**(3) DECLARATORY RELIEF; AND**<br>**(4) BREACH OF BAILMENT**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

Plaintiff International Bravo.com, Inc. ("Plaintiff" or "IB Inc.") by its attorneys, for its complaint against Defendant Ravindra Kumar Lahoti ("Defendant," "Ravi Lahoti," or "Mr. Lahoti"), alleges as follows:

# INTRODUCTION

1. This case involves the theft by Mr. Lahoti of over two thousand domain names worth millions of dollars from Louis Lardas' ("Mr. Lardas") account at the domain name registrar eNom. Mr. Lahoti repeatedly transferred high value domain names out of Mr. Lardas' eNom account and into his own account(s), without authorization, and blocked Mr. Lardas from the use or enjoyment of his domain names. Mr. Lahoti has refused to return any of the stolen domain names to Mr. Lardas, instead, offering a litany of excuses for his illegal acts and stonewalling any efforts to reach a resolution.

2. Pursuant to an Assignment and Assumption Agreement dated as of August 3, 2017 (the "Assignment Agreement"), Mr. Lardas transferred and assigned to IB Inc. "all of his right, title and interest in" (a) the lawsuit against Defendant entitled *Louie Lardas v. Ravindra Kumar Lahoti*, Case No. 8:17-cv-00690-JLS-JDE, filed in this Court on April 14, 2017 and dismissed without prejudice on September 5, 2017 (the "Lardas Lawsuit"); (b) all the domain names subject to the Lardas Lawsuit; and (c) all rights to income from the domain names (collectively the "Assigned Assets").

3. In exchange for this assignment, IB Inc. agreed to assume and perform all obligations, liabilities and commitments arising out of the Assigned Assets (i.e. the domain names).

4. This is an action for a declaratory judgment under 28 U.S.C. §§ 2201 *et seq.*, conversion, breach of bailment, and breach of fiduciary duty.

///
///
///

## PARTIES

5.  Plaintiff International Bravo.com, Inc. ("IB Inc."), is a Delaware corporation with a place of business in the State of Delaware.

6.  Defendant Ravi Lahoti is an individual domiciled in the State of California, County of Orange.

7.  The true names and capacities, whether individual, corporate, associate, or otherwise, of the DOES 1 through 100, inclusive, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names.  Plaintiff will file DOE Amendments and/or will ask leave of court to amend this Complaint to show their true names and capacities when the same have been ascertained.  Plaintiff is informed and believes and thereon alleges that DOES 1 through 100, inclusive, and each of them, are primarily responsible for the occurrences herein alleged and that Plaintiff's injuries alleged herein were proximately caused by such Defendants.  Each reference in this Complaint to Defendants or a specifically named Defendant refers also to all Defendants sued under fictitious names.

8.  Plaintiff is informed and believes and thereon alleges, that at all times herein mentioned, Defendants, and some of them, were the agents, servants, co-conspirators and/or employees of some of the other Defendants, and were acting within the scope of said agency, authority and employment.

## JURISDICTION AND VENUE

9.  This Court has jurisdiction under 28 U.S.C. § 1332(a)(1) because there is diversity of citizenship and an amount of controversy greater than $75,000.

10. Plaintiff is informed and believes and thereon alleges that all Defendants reside in and/or are authorized to do business and are doing business in California, have sufficient minimum contacts with California and/or otherwise have purposefully availed themselves of the benefits and protections of California law such that this Court has personal jurisdiction over each Defendant.

1  11. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because Defendant resides here and Plaintiff's claims arose in this judicial district.

## GENERAL ALLEGATIONS

12. Mr. Lardas and Mr. Lahoti met in or around 2005, after Mr. Lahoti left a note in Plaintiff's mailbox, and then, shortly after, pulled up behind Mr. Lardas' car when he was driving home and asked what his license plate meant. The license plate read, "EZ1 COM." Mr. Lahoti encouraged Mr. Lardas to check out his Web site, www.DMV.org.

13. At that time, Mr. Lardas lived in Huntington Beach, California. Both parties made their living in the field of domain names.

14. The friendship quickly grew to the point where Mr. Lardas and Mr. Lahoti regularly spoke on the phone with each other for hours, daily.

15. Mr. Lardas considered Mr. Lahoti to be one of his closest and most trusted friends.

16. On or about October 19, 2012, faced with a personal emergency, Mr. Lardas asked Mr. Lahoti, in writing, to help him to "take care of [his] business," including "renew[ing his] domain names." Mr. Lahoti agreed.

17. Mr. Lardas provided Mr. Lahoti with the user name and passwords for his eNom "Internet Domains" account, and related business accounts.

18. Mr. Lardas did not know at the time that Mr. Lahoti had frozen one brother out of their joint domain name business, and would be sued by another brother in January 2014 for stealing the <DMV.org> domain name and corresponding Web site.

19. Following Mr. Lardas' request, Mr. Lahoti assumed management of Mr. Lardas' domain name account at eNom. At some point in January 2013, without Mr. Lardas' knowledge or authorization, Defendant began transferring domain names out of Mr. Lardas's account and into his personal accounts with eNom and Dynadot.

20. Defendant continued transferring domain names out of Mr. Lardas' account through June 2014, and again briefly from December 2015 through early 2016.

21. A list of roughly 2,050 domain names transferred without authorization out of Mr. Lardas' eNom account by Defendant is attached hereto as **Exhibit A** (the "Domain Names").

22. Mr. Lardas first became aware that Defendant had been secretly transferring Mr. Lardas' Domain Names into Defendants' registrar accounts in or around March 2014. Mr. Lardas did not realize, at that time, that Defendant intended to steal the Domain Names.

23. Indeed, Defendant repeatedly acknowledged Mr. Lardas' ownership of the Domain Names, but claimed that he needed to push them into his account(s) to keep track of which domain names he had renewed.

24. Defendant continued to string Mr. Lardas along for years, acknowledging Mr. Lardas' ownership, but never transferring the Domain Names back to Mr. Lardas.

25. Indeed, on several occasions, Defendant agreed to transfer the Domain Names into a joint account where Mr. Lardas would have access and be able to sell and monetize his domains, but Defendant inexplicably never followed through.

26. In June 2016, Defendant's motives became clear, when he suggested that, in order to get his names back, Mr. Lardas split the Domain Names with him – which Defendant valued at $10 million – fifty-fifty, to cover Defendant's claimed expenses of roughly $200,000.

27. In other words, after hijacking Mr. Lardas' Domain Names and cutting off Mr. Lardas' only sources of income, Defendant attempted to extort Mr. Lardas into giving him $5 million worth of domain names to cover alleged expenses of $200,000, which were actually closer to $90,000 – Defendant greatly

exaggerated his out-of-pocket expenditures. Upon information and belief, it was always Defendant's plan to steal Mr. Lardas' Domain Names.

28. Following the above, Mr. Lardas finally concluded that Defendant never intended to return the Domain Names to him. After a demand letter from counsel failed to induce Defendant to return the Domain Names, Mr. Lardas had no options left but to pursue an action in Court.

29. The Domain Names are the property of Plaintiff.

30. On or about August 3, 2-17, pursuant to the Assignment Agreement, Mr. Lardas transferred and assigned to IB Inc. "all of his right, title and interest in" (a) the lawsuit against Defendant entitled *Louie Lardas v. Ravindra Kumar Lahoti*, Case No. 8:17-cv-00690-JLS-JDE, filed in this Court on April 14, 2017 and dismissed without prejudice on September 5, 2017 (the "Lardas Lawsuit"); (b) all of the domain names subject to the Lardas Lawsuit; and (c) all rights to income from the domain names (collectively the "Assigned Assets"). A true and correct copy of the Assignment Agreement is annexed hereto as **Exhibit B**.

31. In exchange for this assignment, IB Inc. agreed to assume and perform all obligations, liabilities and commitments arising out of the Assigned Assets (i.e. the domain names).

32. Defendant had and has no ownership or equity interest in or to the Domain Names, and no legal right to transfer them.

33. The Domain Names are believed to be worth millions of dollars, with many individually valued in the range of mid-five to six figures.

34. Upon seizing control of the Domain Names, Defendant disabled the DNS for domains enrolled in parking monetization, and blocked Mr. Lardas from selling domain names from his portfolio, thus, preventing him from earning an income.

35. Upon further information and belief, Defendant diverted parking revenues from domain names parked with Google for his own use.

COMPLAINT

36.     By interfering with Mr. Lardas' parking revenues and domain name sales, Defendant created an untenable situation whereby Mr. Lardas became financially dependent on Defendant, and unable to pay for domain name renewals on his own.

37.     Defendant had no right to transfer, to himself or anyone else, thousands of Domain Names worth millions of dollars, or otherwise to interfere with Mr. Lardas' (and, now, Plaintiff's) ownership of those Domain Names.

38.     Mr. Lardas made numerous requests to Defendant to return the Domain Names to Mr. Lardas control, as registered name holder.  While never contesting Mr. Lardas' ownership of the Domain Names, Defendant has strung Mr. Lardas along for years, repeatedly promising to return the Domain Names to Mr. Lardas, but never doing it.

39.     After obtaining the Assigned Assets, Plaintiff informed Defendant's counsel in the Lardas Lawsuit of its ownership of Mr. Lardas's claims therein, which sought, *inter alia*, the return of the Domain Names. To date, Defendant has not responded to any of Plaintiff's communications.

40.     Defendant has instead tried to justify his hijacking of the Domain Names, claiming that he is allegedly owed monies for renewal fees, but has never provided an accounting, or any documentation, of his claimed expenses.

41.     In other words, Defendant has made no real effort to resolve his alleged monetary concerns, which are merely a pretext for hijacking Domain Names that are worth hundreds to thousands of times the renewal fees claimed to have been advanced by Defendant.

42.     Even if Defendant was owed monies for advancing renewal fees, Defendant has no security interest in the Domain Names and, accordingly, had no right to transfer them out of Mr. Lardas' account and into his own, or third party accounts.

43. Inexplicably, Defendant allowed roughly 250 domain names to expire, all after Mr. Lardas had demanded that those domain names be returned to his account. 174 of those domain names are currently registered in the names of third parties, or are under private registration.

44. Upon information and belief, Defendant has victimized other parties in a manner similar to what he did to Mr. Lardas, such that his conduct in this case was clearly oppressive, fraudulent, and malicious.

45. Upon further information and belief, Defendant was aware of Mr. Lardas' financial hardship, and knew that if he disabled Mr. Lardas' domain name parking revenues and prevented Mr. Lardas from being able to sell domain names from his portfolio, that Mr. Lardas would have no way to repay Defendant. As such, Mr. Lardas would be forced to go deeper into debt to Defendant, with the intent that Mr. Lardas would eventually either lose all of the Domain Names to Defendant or be forced to agree to give Defendant half of the Domain Names.

## FIRST CAUSE OF ACTION
## FOR CONVERSION

(Against Ravindra Kumar Lahoti, and DOES 1-100, inclusive)

46. Plaintiff realleges and incorporates by reference Paragraphs 1 through 45 as though fully set forth here.

47. IB Inc. is the rightful registrant and owner of the Domain Names.

48. Defendant has intentionally and substantially interfered with the Domain Names by taking possession of them and preventing Plaintiff from accessing them.

49. Plaintiff did not consent to this conversion.

50. Defendant's conduct in taking control of the Domain Names, disabling the domain parking and/or converting parking revenues, selling domain names to third parties, and interfering with Plaintiff's ability to monetize, license and sell the Domain Names have all caused substantial damages to Plaintiff.

51. In addition to any damages to be proven at trial, Plaintiff is entitled to specific recovery of the Domain Names, plus damages for their detention.

52. Punitive damages are available because Defendant's conduct constituted oppression, fraud, and/or malice.

## SECOND CAUSE OF ACTION

## FOR BREACH OF FIDUCIARY DUTY

(Against Ravindra Kumar Lahoti, and DOES 1-100, inclusive)

53. Plaintiff realleges and incorporates by reference Paragraphs 1 through 52 as though fully set forth here.

54. Mr. Lardas and Defendant were friends and business partners.

55. As such, a fiduciary relationship existed between Ravi Lahoti and Mr. Lardas, whereby Ravi Lahoti owed fiduciary obligations to Mr. Lardas.

56. Defendant breached his fiduciary duty because he did not act with the utmost good faith in the best interest of Mr. Lardas' business, with which Mr. Lardas entrusted him. He caused over two thousand valuable Domain Names to be transferred out of Mr. Lardas' name and into his own name, some one hundred and seventy-four of which are now listed as being registered by third parties, cut off or usurped Mr. Lardas' domain name parking revenue, interfered with or took for himself Mr. Lardas' sale opportunities – all to his own benefit and to the detriment and at the expense of Mr. Lardas. Mr. Lardas did not give informed consent to any of this conduct.

57. Defendant's conduct was a substantial factor in causing damage to Mr. Lardas through the breach of his fiduciary duty. Mr. Lardas has lost control of thousands of domain names worth millions of dollars, as well as domain name parking revenues and other business opportunities.

58. Plaintiff is the assignee of Mr. Lardas's rights to this claim.

///

///

59. In addition to damages to be proven at trial, punitive damages are available because Defendant's conduct constituted oppression, fraud, and/or malice.

## THIRD CAUSE OF ACTION

## FOR DECLARATORY RELIEF (28 U.S.C. §§ 2201 et seq.)

(Against Ravindra Kumar Lahoti, and DOES 1-100, inclusive)

60. Plaintiff realleges and incorporates by reference Paragraphs 1 through 59 as though fully set forth here.

61. The Domain Names were rightfully and validly registered by Mr. Lardas in his "Internet Domains" account at the domain name registrar, eNom, and were in good standing at the time that they were hijacked by Defendant. Mr. Lardas never authorized their transfer to Defendant.

62. As such, Mr. Lardas was the rightful registrant and registered name holder of the Domain Names.

63. Plaintiff is the assignee of Mr. Lardas's rights to this claim.

64. As such, IB Inc. is the rightful registrant and registered name holder of the Domain Names.

65. Defendant has not returned the Domain Names to Plaintiff despite his awareness of Plaintiff's demand for same.

66. A justiciable controversy exists between Plaintiff and Mr. Lahoti.

67. To resolve this actual controversy, Plaintiff seeks a declaration and judgment that it is the rightful registrant and registered name holder of the Domain Names, and seeks an Order of this Court transferring the Domain Names to Plaintiff.

///

///

///

# FOURTH CAUSE OF ACTION
# FOR BREACH OF BAILMENT

(Against Ravindra Kumar Lahoti, and DOES 1-100, inclusive)

68. Plaintiff realleges and incorporates by reference Paragraphs 1 through 67 as though fully set forth here.

69. IB Inc. owns the Domain Names.

70. Mr. Lardas provided Mr. Lahoti with the user name and passwords for his eNom "Internet Domains" account, and related business accounts for the purpose of enabling Defendant to manage renewals for Mr. Lardas's Domain Names.

71. A bailment arises where possession, but not ownership, of property is transferred from one party ("bailor") to another ("bailee"). Where a bailee has received a bailment from a bailor, a duty of care is owed. Typically, a bailee is strictly liable for the bailment.

72. Notwithstanding the parties' agreement to maintain the Domain Names in Mr. Lardas's account for a period of indefinite duration, when Defendant pushed or transferred the Domain Names from Mr. Lardas's account to his own, a bailment had been created.

73. In short, Defendant's unilateral actions created the bailment with respect to Mr. Lardas's Domain Names.

74. As such, during the period of bailment, Defendant, as bailee, owed Mr. Lardas, as bailor, a duty of care to safeguard the Domain Names by maintaining reasonable security procedures and practices to protect same and duty to return the Domain Names.

75. While not initially authorized to transfer the Domain Names, Defendant admitted that he received a benefit from the bailment in the form bulk or blanket discounts on domain name renewals for his own separate domain names once he transferred Mr. Lardas's Domain Names to his personal account.

76. Defendant violated his duty of reasonable care by allowing some two hundred of the Domain Names to be listed as registered by third parties, cutting off or usurping Mr. Lardas's domain name parking revenue, and/or interfering with or taking for himself Mr. Lardas's sale opportunities – all to his own benefit and to the detriment and at the expense of Mr. Lardas.

77. As a result of Defendant's breach of this duty, Plaintiff has been harmed and damaged in an amount to be proven at trial.

78. Plaintiff is the assignee of Mr. Lardas's rights to this claim.

79. As such, in addition to any damages to be proven at trial, Plaintiff is entitled to specific recovery of the Domain Names.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following:

1. Entry of an order and judgment requiring that Defendant, including his agents, servants, employees, and representatives, and all other persons, firms or corporations in active concert or participation with them, be enjoined and restrained from: (a) maintaining the Domain Names under their control.

2. For a declaratory judgment that International Bravo.com, Inc. is the rightful registrant and registered name holder of the Domain Names.

3. A judgment ordering Defendant to take all steps necessary to transfer to Plaintiff the Domain Names and any other domain names of Plaintiff's that are in Defendant's possession or control (at an account to be designated by Plaintiff's counsel), or other assets that belong to Plaintiff that are in Defendant's possession or control within two (2) days of entry of order.

4. For compensatory damages in an amount according to proof and/or restitution owed to Plaintiff due to the wrongs of Defendant.

5. For disgorgement of all gains, profits, and advantages derived by Defendants from their acts of conversion, breach of fiduciary duty, and other violations of the law.

6. For punitive damages according to proof.

7. For Plaintiff's reasonable attorney's fees and costs of suit and expenses according to proof.

8. For legal interest on all sums awarded, according to proof.

9. For such other relief as the Court deems just and equitable under the circumstances.

DATED this 15th day of September, 2017.

Respectfully submitted,

STALWART LAW GROUP

/s/ Ji-In Lee Houck
Ji-In Lee Houck

LEWIS & LIN, LLC
Brett E. Lewis (*pro hac vice* application forthcoming)

*Attorneys for Plaintiff International Bravo.com, Inc.*

COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiff International Bravo.com, Inc. hereby demands a trial by jury on every issue on which it is so entitled.

Dated: September 15, 2017

Respectfully submitted,

STALWART LAW GROUP

/s/ Ji-In Lee Houck
Ji-In Lee Houck

LEWIS & LIN, LLC
Brett E. Lewis (*pro hac vice* application forthcoming)

*Attorneys for Plaintiff International Bravo.com, Inc.*