1   JACOB C. GONZALES (SBN 235555)
    jgonzales@weintraub.com
2   DARRELL P. WHITE (SBN 270038)
    dwhite@weintraub.com
3   **weintraub | tobin**
4   23 Corporate Plaza Drive, #200
5   Newport Beach, California 92660-7901
    Tel: (949) 760-0204; Fax: (949) 760-2507
6

7
    Attorneys for Defendant
8   RAVINDRA KUMAR LAHOTI

9              UNITED STATES DISTRICT COURT
10
11            CENTRAL DISTRICT OF CALIFORNIA

12  INTERNATIONAL BRAVO.COM, INC.,    Case No. 8:17-cv-001614-JLS-JDE
13  a Delaware Corporation
                                       Judge: Hon. Josephine L. Staton
14          Plaintiff,
15                                     **DEFENDANT'S NOTICE OF**
          v.                           **MOTION AND MOTION TO**
16                                     **DISMISS PLAINTIFF'S**
17  RAVINDRA KUMAR LAHOTI, et al.,     **COMPLAINT**
18          Defendants.
                                       Date: December 22, 2017
19                                     Time: 2:30 p.m.
20                                     Dept.: 10A

21
22
23
24
25
26
27
28

{00032731.DOCX:4}

TO PLAINTIFF AND HIS ATTORNEY OF RECORD:

Please take notice that on December 22, 2017, at 2:30 p.m. in Department 10A of the above-entitled court, located at 411 West Fourth Street, Santa Ana, CA 92701, Defendant RAVINDRA KUMAR LAHOTI ("Defendant") will and hereby does move the Court for an order dismissing all of Plaintiff INTERNATIONAL BRAVO.COM INC.'s ("Plaintiff") claims against Defendant for failure to state a claim upon which relief may be granted under Federal Rules of Civil Procedure section 12(b)(6).

This motion is based on this notice of motion, the memorandum of points and authorities in support thereof, the pleadings and records on file with this Court, and such evidence and argument as may be presented at the hearing on this motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on November 15, 2017.

Dated: November 22, 2017          **weintraub** | **tobin**

By: _____
Jacob C. Gonzales
Attorneys for Defendant
RAVINDRA KUMAR LAHOTI

## Table of Contents

**Page**

I. INTRODUCTION .................................................................................................. 6

II. FACTUAL BACKGROUND ............................................................................... 7

III. LEGAL STANDARD ........................................................................................... 9

IV. ARGUMENT ...................................................................................................... 10

    A. IB Inc.'s Claims Are Time Barred ............................................................. 10

        1. The Conversion, Bailment, Declaratory Relief Claims Are Barred by a Three-Year Limitations Period ............................. 11

        2. The Fiduciary Duty Claim Is Barred by a Three-Year Limitations Period ................................................................. 12

        3. No Specific Facts Are Alleged to Toll the Limitations Period 14

    B. Plaintiff Has Not Adequately Pled a Claim for Conversion ............... 16

    C. Plaintiff Has Not Adequately Pled a Claim for Breach of Fiduciary Duty .................................................................................................. 17

    D. Plaintiff Has Not Adequately Pled a Claim for Declaratory Relief .. 18

    E. Plaintiff Has Not Adequately Pled a Claim for Bailment .................. 19

V. CONCLUSION ................................................................................................... 20

weintraub tobin chediak coleman grodin
law corporation

## Table of Authorities

Page

### FEDERAL CASES

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).................................................................9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .............................9, 10

*Club Corp. v. Taylor*, 679 F.Supp.2d 1060 (N.D. Cal. 2009) .............................16

*Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117 (9th Cir. 1980)....................15

*Earhart v. Callan*, 221 F.2d 160 (9th Cir. 1955)...............................................19

*Estate of Amaro v. City of Oakland*, 633 F.3d 808 (9th Cir. 2011) .....................14

*Evans v. United States*, 2017 U.S. App. LEXIS 4341 (Fed. Cir. Mar. 13, 2017)................................................................................................19

*First Interstate Bank of Arizona, N.A., v. Murphy, Weir and Butler*, 210 F.3d 983 (9th Cir. 2000).........................................................................17

*Graham-Sult*, 756 F.3d 724 (9th Cir. 2014) ......................................................17

*Guerrero v. Gates*, 357 F.3d 911 (9th Cir. 2004)...............................................15

*Ileto v. Glock Inc.*, 349 F.3d 1191 (9th Cir. 2003) .............................................10

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942 (S.D. Cal. 2012) ................................................................20

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) ...............................................10

*Larson v. Northrop Corp.*, 21 F.3d 1164 (D.C. Cir. 1994) .................................15

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941)....................18

*Medina v. Microsoft Corp.*, 2014 U.S. Dist. LEXIS 71271 (N.D. Cal. May 23, 2014)............................................................................................16

*Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873 (9th Cir. 1984)................................................................................................11

*Santa Maria v. Pacific Bell*, 202 F.3d 1170 (9th Cir. 2000) ...............................15

*Swingless Golf Club Corp. v. Taylor*, 679 F.Supp.2d 1060 (N.D. Cal. 2009)................................................................................................16

*United States v. Alcaraz-Garcia*, 79 F.3d 769 (9th Cir. 1996) ...........................20

*Wasco Prods., Inc. v. Southwall Techs.*, Inc., 435 F.3d 989 (9th Cir. 2006)................................................................................................14

weintraub tobin chediak coleman grodin
law corporation

*Western Mining Council v. Watt*, 643 F.2d 618 (9th Cir. 1981) .................... 10, 18

*Whitcombe v. Stevedoring Servs. of Am.*, 2 F.3d 312  (9th Cir. 1993) ................. 19

*Wolf v. Travolta*, 2014 U.S. Dist. LEXIS 165513, (C.D. Cal. Nov. 24 2014) ................................................................................................................ 14

## CALIFORNIA CASES

*Bufano v. San Francisco*, 233 Cal.App.2d 61 (1961) ........................................... 12

*Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.3d 197 (1983) ......................................................................................... 17

*Coy v. County of Los Angeles*, 235 Cal. App. 3d 1077 (1991) ............................ 11

*Curtis v. Kellogg & Andelson*, 73 Cal.App.4th 492 (1999) .................................. 14

*Day v. Greene*, 59 Cal.2d 404 (1963) ................................................................. 11

*Devereaux v. Harper*, 210 Cal.App.2d 519 (1962) ............................................. 19

*Dodge v. Meyer*, 61 Cal. 405 (1882) ................................................................. 12

*Farrington v. A. Teichert & Son, Inc.*, 59 Cal.App.2d 468 (1943) ...................... 16

*Fremont Indemnity Co. v. Fremont General Corp.*, 148 Cal.App.4th 97 (2007) ............................................................................................................... 16

*Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Associates, Inc.*, 115 Cal. App. 4th 1145 (2004) ............................................................. 13, 14

*Maguire v. Hibernia Sav. & Loan Soc.*, 23 Cal.2d 719 (1944) ........................... 11

*Mangini v. Aerojet-General Corp.*, 230 Cal. App.3d 1125 (1991) ..................... 11

*Mason v. Woodland Sav. & Loan Ass'n*, 254 Cal.App.2d 41 (1967) ................... 19

*Mfrs. Life Ins. Co. v. Superior Court*, 10 Cal.4th 257 (1995) ............................. 14

*Niiya v. Goto*, 181 Cal.App.2d 682 (1960) ........................................................ 11

*Richelle L. v. Roman Catholic Archbishop*, 106 Cal.App.4th 257 (2003) ............................................................................................................... 17

*Stoll v. Superior Court*, 9 Cal.App.4th 1362 (1992) ........................................... 14

*Whittenmore v. Davis*, 112 Cal.App. 702 (1911) ............................................... 12

*Winn v. McCulloch Corp.*, 60 Cal.App.3d 663 (1976) ........................................ 12

*Wolf v. Super. Ct.*, 107 Cal.App.4th 25 (2003) .................................................. 17

## CALIFORNIA STATUTES

Cal. Code Civ. Proc. § 338(c) ............................................................................. 11

weintraub tobin chediak coleman grodin
law corporation

{00032731.DOCX;4}

Page -4-

Cal. Corp. Code §§ 16501 ..................................................................................... 18

## OTHER AUTHORITIES

RUTTER GROUP PRAC. GUIDE: FEDERAL CIV. PRO. BEFORE TRIAL (The
    Rutter Group 2017) ("O'Connell & Stevenson") §§ 9:212.1-1a ....................... 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

weintraub tobin chediak coleman grodin
law corporation

{00032731.DOCX;4}

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

weintraub tobin chediak coleman grodin
law corporation

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In October 2012, Defendant Ravi Lahoti ("Lahoti") received an email from his one-time friend Louie Lardas ("Lardas") saying that Lardas was concerned he might be arrested the next day, and asking Lahoti to do him a favor and pay renewal fees for Lardas' domain names. Willing to help his friend with what was to be a short-term favor, and trusting Lardas to pay him back as promised, Lahoti started paying the renewal fees. However, what was to be a couple of weeks turned into months. Thus, Lahoti informed Lardas he was transferring the domain names to his own accounts to keep track of those he renewed and protect his credit card information. Lahoti ultimately paid tens of thousands of dollars – renewing the domain names for years. Lardas made repeated, unfulfilled promises to repay Lahoti. Lardas eventually promised Lahoti a 50% interest in the domains, and to split the profits from their sale. Lardas also failed to honor that promise.

Plaintiff International Bravo.com, as Lardas' purported assignee concerning the domain names, initiated this action against Lahoti for conversion, breach of fiduciary duty, declaratory relief and bailment. Each of Plaintiff's claims is defective. *First*, each claim is time barred. *Second*, Plaintiff's conversion claim fails because Lardas acquiesced to the transfer of at least some of the domain names. *Third*, Plaintiff's breach of fiduciary duty claim is defective because it has not adequately pled a fiduciary relationship between Lardas and Lahoti. *Fourth*, Plaintiff's declaratory judgment claims fails because the relief Plaintiff seeks (a declaration that Lardas is the sole owner of the domain names) is inconsistent with Plaintiff's allegations that Lardas and Lahoti were business partners. *Fifth*, Plaintiff's bailment claim does not allege a contract between Lardas and Lahoti or Lardas' deposit of the domains with Lahoti – necessary allegations to a bailment claim. For these reasons, and those below, the motion to dismiss should be granted.

## II.   FACTUAL BACKGROUND

The relevant facts, as alleged by Plaintiff, are as follows:

Lardas and Lahoti were friends. (Complaint ¶¶ 14-15.) They met in 2005, and both made their livings in domain names. (*Id.* ¶¶ 12-13.)

On October 19, 2012, Lardas sent Lahoti an email saying he had court the next day and it was possible he would be arrested. Lardas asked Lahoti for a "favor" and to help "take care of business" by renewing Lardas' "domains", promising to "pay [Lahoti] back every penny":

From: Louie Lardas <louie@Internetdomains.com>
Date: October 19, 2012 at 4:21:24 AM PDT
To: ravi <ravi@serious.net>
Subject: I'm worried and paranoid right now!

Dude..I have to admit, I am a little worried. Tried to call you earlier but no answer.

I have court tomorrow, my lawyer is coming to the island to be there.
We are just scheduled for a progress report but...

I had been reinstated in to my class, and then I missed the
the first class this past Monday. It could be possible that I
get arrested tomorrow. God I hope that doesn't happen but...

So I am going to ask a favor of you.If for some reason you do not
hear from me... I will call you before noon if all is clear. I hope
I can count on you if something does happen.

call Jen at 310-510-0088, ask her to go take care of princess. The key for my condo is
in a a keybox. The code is
7248.

Also, help me take care of business. My emails are gmails.. you have to put in the
whole email address

louie@internetdomains.com pw: aaabbb I am currently dealing with jerk.com, it's in
the sent box contact@internetdomains.com pw: thisone1 That is where the
inquiries usually come to. enom login idomains pw: 146932RR the email on the
account is the contact@internetdomains.com just in case the password is wrong.
If you would please renew my domains, I will pay you back every penny

AS I SAID ...GOD I HOPE I'M just being paranoid.. but better safe then sorry.

--
Louie Lardas
Internet Domains Mgmt
InternetDomains.com
800-969-6155

(*Id.* ¶ 16.[1])

---

[1] Paragraph 16 of the Complaint quotes a few excerpts from Lardas' October 19, 2012 email to Lahoti: "On or about October 19, 2012, faced with a personal emergency, Mr. Lardas asked Mr. Lahoti, in writing, to help him to 'take care of [his] business' including 'renew[ing his] domain names.'" (*Id.* ¶ 16.) Lahoti hereby incorporates by reference Lardas' entire October 19, 2012

(Footnote continues on next page.)

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

weintraub tobin chediak coleman grodin
law corporation

1   Without Lahoti asking, Lardas unilaterally sent Lahoti the usernames and

2   passwords for Lardas' domain and business accounts – all set forth in Lardas'

3   October 19 email. Lahoti was under no obligation to pay the renewal fees for the

4   domain names, to safeguard Lardas' passwords or accounts, or to take any action

5   whatsoever. Nevertheless, Lahoti started paying renewal fees on what was to be a

6   short-term "favor", and on  Lardas' promise to pay him back.[2] Doing so did not

7   obligate Lahoti to continue paying the renewal fees indefinitely, and he could stop

8   paying any time.

9   Plaintiff contends that Lardas was not aware that, in around January 2013,

10   Lahoti began transferring domain names out of Lardas' account and into his own

11   account. (*Id*. ¶ 19.) However, Plaintiff acknowledges that by **March 2014**, Lardas

12   knew Lahoti was transferring the domain names. Lahoti continued transferring the

13   domain names through June 2014, and transferred domain names again from

14   December 2015 through early 2016. A list of 2,050 domain names allegedly

15   transferred by Lahoti is attached to the complaint as Exhibit A. (*Id*. ¶¶ 20-22.)

16   Lahoti told Lardas that he was transferring the domain names into his own

17   accounts to keep track of the ones he renewed. Lahoti acknowledged Lardas'

18   ownership of the domain names, and allegedly agreed to transfer them to a joint

19

20   (Footnote continued from previous page.)

21   email. A "defendant may attach to a Rule 12(b)(6) motion the documents referred to in the
complaint *to show they do not support* plaintiff's complaint. The court *may* – but is not required

22   to – incorporate those documents by reference into the complaint for purposes of deciding the
motion. … Documents not physically attached to the complaint may nonetheless be considered by

23   the court on a 12(b)(6) motion to dismiss if: the complaint *refers* to such document; the document
is 'central' to plaintiff's claim; and no party questions the authenticity of the copy attached to the

24   12(b)(6) motion." O'Connell & Stevenson, RUTTER GROUP PRAC. GUIDE; FEDERAL CIV. PRO.
BEFORE TRIAL (The Rutter Group 2017) ("O'Connell & Stevenson") §§ 9:212.1-1a (emphasis in

25   original; cites omitted).

26   [2] Absent from the complaint is any assertion that Lardas repaid Lahoti the tens of thousands of

27   dollars he spent renewing the domain names from 2012 to 2017, or that Plaintiff intends to repay
such sums.

28

{00032731.DOCX;4}

Page -8-

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

weintraub tobin chediak coleman grodin
law corporation

account so Lardas could sell and monetize them but this did not happen. (*Id.* ¶¶ 23-25.) Plaintiff alleges that in June 2016, Lahoti suggested Lardas split the domain names with him to cover Lahoti's loans to Lardas and expenses advanced, including renewal fees. (*Id.* ¶¶ 26-27.)

Plaintiff contends the domain names are worth tens of millions of dollars. (*Id.* ¶ 33.) Plaintiff further contends that as Lahoti transferred domain names into his own accounts, the DNS for domain names was disabled, Lardas was blocked from selling them, the revenue from  the domains was diverted for Lahoti's own use, and Lardas was prevented from generating income. (*Id.* ¶¶ 34-35.) As such, Lardas could not pay for the domain name renewals himself. (*Id.* ¶ 36.)

Plaintiff asserts that Lahoti has not provided an accounting of the monies he is owed for advancing the renewal fees for the domain names. Plaintiff further asserts Lahoti has no security interest in the domain names, and no right to transfer them. Plaintiff also contends that Defendant did not pay the renewal fees on 250 domain names, which expired. (*Id.* ¶¶ 40-43.)

## III.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), citing, 550 U.S. at 556.

The Court in *Twombly* explained that a complaint is read in conjunction with Federal Rule of Civil Procedure 8(a)(2) which requires a "showing" that the plaintiff is entitled to relief, "rather than a blanket assertion" of entitlement to relief. *Id.* at 556, n. 3. While Rule 8 does not require "detailed factual allegations," it nevertheless "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal, supra*, 129 S. Ct. at 1949. A pleading that offers "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly, supra*, 550 U.S. at 555.

In considering this motion to dismiss, the Court must accept all factual allegations of the complaint as true and construe those facts, as well as the inferences from those facts, in the light most favorable to Plaintiff. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However, the Court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) , citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) .

## IV.   ARGUMENT

### A.   IB Inc.'s Claims Are Time Barred

"Where the facts and dates alleged in the complaint indicate the claim is barred by the statute of limitations, a motion to dismiss for failure to state a claim lies. The complaint fails to state a claim because the action is time-barred." O'Connell & Stevenson § 9:194, p. 9-70 (cites omitted).

Here, the gravamen of all four causes of action alleged by Plaintiff in the complaint is that Lahoti did not have the right to transfer the domain names out of Lardas' account, and doing so resulted in conversion. (*See, e.g.*, Complaint ¶ 19 ("At some point in January 2013, without Mr. Lardas' knowledge or authorization, [Lahoti] began transferring domain names out of Mr. Lardas's account…."); *id*. ¶ 32 ("[Lahoti] had and has no ownership or equity interest in or to the Domain Names, and no legal right to transfer them."); *id*. ¶ 37 ("[Lahoti] had no right to transfer, to himself or anyone else, thousands of Domain Names ….").

However, Plaintiff alleges that as of **March 2014**, Lardas knew Lahoti was transferring the domain names. As such, Plaintiff's claims are all subject to a three-year limitations period. *See Day v. Greene*, 59 Cal.2d 404, 411 (1963) ("The statute of limitations to be applied is determined by the nature of the right sued upon, not by the form of the action or the relief demanded."). Plaintiff had three

{00032731.DOCX;4}

Page -10-

years from March 2014 – *i.e.*, until March 31, 2017 at the latest – to sue. Because Plaintiff waited until September 15, 2017 to initiate this action, its claims are time-barred.

### 1.    The Conversion, Bailment, Declaratory Relief Claims Are Barred by a Three-Year Limitations Period

In federal diversity actions such as this, California state law applies to determine the statute of limitation periods. *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 876-877 (9th Cir. 1984). California has a three-year limitations period for conversion actions. *See Coy v. County of Los Angeles*, 235 Cal. App. 3d 1077, 1087 (1991)  (Cal. Code Civ. Proc. § 338(c) 's three-year limitations period applies to an action for conversion of personal property). Likewise, the applicable limitations period for bailment claims is also three years. *See Niiya v. Goto*, 181 Cal.App.2d 682, 687, 690 (1960) (Bailment is subject to Cal. Code Civ. Proc. § 338(c) 's three-year limitations period, and "[i]f bailee is shown to have done some act implying the exercise of dominion or assumption of title, or of dominion over the property, or some act inconsistent with plaintiff's right of ownership, or in repudiation of such right, the statute of limitations begins to run at that time.")

Additionally, "the statute of limitations governing a request for declaratory relief is the one applicable to an ordinary legal or equitable action based on the same claim." *Mangini v. Aerojet-General Corp.*, 230 Cal. App.3d 1125, 1154 (1991); *Maguire v. Hibernia Sav. & Loan Soc.*, 23 Cal.2d 719, 734 (1944) (The "period of limitations applicable to ordinary actions at law and suits in equity should be applied in like manner to actions for declaratory relief.").

The thrust of Plaintiff's conversion, bailment and declaratory relief claims is that Lahoti did not have the right to transfer the domain names out of Lardas' account and into his own account. (Complaint ¶ 48 (Conversion: "Defendant… interfered with the Domain Names by taking possession of them and preventing Plaintiff from accessing them."); *id*. ¶ 72 (Bailment: "Notwithstanding the parties'

agreement to maintain the Domain Names in Mr. Lardas' account for a period of indefinite duration … Defendant pushed or transferred the Domain Names from Mr. Lardas's account to his own….")[3]; *id.* ¶ 61 (Declaratory Relief: "The Domain Names were … registered by Mr. Lardas in his 'Internet Domains' account …. [and] Mr. Lardas never authorized their transfer to Defendant.").

As of March 2014, Plaintiff knew about the transfers. Thus, it had three years – until March 31, 2017 – to sue for conversion, breach of bailment and declaratory relief. Plaintiff did not meet the deadline, and its claims are time barred.[4]

### 2.    The Fiduciary Duty Claim Is Barred by a Three-Year Limitations Period

Although a fiduciary duty claim normally has a four-year limitations period, the Court should look past the title given to the claim by Plaintiff and, instead, look at the gravamen of the claim, which is Lahoti's alleged improper transfer of the domain names resulting in conversion: "[Lahoti] caused over two thousand valuable Domain Names to be transferred out of Mr. Lardas' name and into his own name, some… of which are now listed as being registered by third parties, cut off or usurped Mr. Lardas' domain name parking revenue, interfered with or took for

---

[3] Unilaterally changing the terms of a bailment is conversion. *Dodge v. Meyer*, 61 Cal. 405, 408 (1882); *Bufano v. San Francisco*, 233 Cal.App.2d 61, 70 (1961) ("Where an original taking is wrongful, the bar of the statute runs from the time of the unlawful taking….").

[4] Although Plaintiff alleges domain names were transferred from January 2013 until June 2014 and briefly from December 2016 to early 2016 (Complaint ¶¶ 20-21), it cannot avoid the statute of limitations by omitting dates when specific transfers occurred. Rather, "[i]f the allegations in the pleading are silent as to dates, and it appears that such dates are material to the issue, it must be presumed that a statement of such dates would have weakened the pleader's case." *Whittenmore v. Davis*, 112 Cal.App. 702, 708 (1911); *see also Winn v. McCulloch Corp.*, 60 Cal.App.3d 663 (1976) (demurrer proper where date of breach not alleged). Indeed, Lardas' account would show the date each domain name was transferred. Thus, the specific dates that were omitted are available to Plaintiff. It simply elected not to include them, presumably in hopes of avoiding the limitations period.

weintraub tobin chediak coleman grodin

himself Mr. Lardas' sale opportunities – all to his own benefit and to the detriment and at the expense of Mr. Lardas." (Complaint ¶ 56, emphasis added.)

As such, the applicable limitations period is three years under California Code of Civil Procedures section 338(c). This is supported by *Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Associates, Inc.,* 115 Cal. App. 4th 1145 (2004). There, plaintiff alleged defendant, an insurance broker, obtained insurance with less coverage than requested. Plaintiff sued for negligence, breach of oral contract, negligent misrepresentation and breach of fiduciary duty. Because the "gravamen" of plaintiff's suit was for professional negligence, the court of appeal applied the two-year limitations period to plaintiff's "breach of fiduciary duty" claim, stating:

> To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the "gravamen" of the cause of action. The nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations under our code.

*Hydro-Mill,* 115 Cal. App. 4th at 1153 (quotation omitted).

The court rejected plaintiff's attempt to "prolong the limitations period" by bringing a fiduciary duty claim finding that the "allegations of professional negligence subsume all of the allegations for breach of fiduciary duty" because both causes of action were based on the same allegations and the allegations "regardless of appellation, amount to a claim of professional negligence." *Id.* at 1159. *Hydro-Mill* held that, "because the gravamen of this lawsuit is [defendant]'s failure to execute its obligations as an insurance broker, the two-year limitations period for professional negligence applies to the cause of action denominated 'breach of fiduciary duty,' rendering it untimely." *Id.* at 1159-60.

Just as in *Hydro-Mill* , here, Plaintiff's conversion allegations subsume its fiduciary duty allegations, as both claims are based on the same allegation: Lahoti improperly transferred the domains out of Lardas' account. (Complaint ¶¶ 48, 56.) Regardless of the fiduciary duty label, Plaintiff really purports to allege conversion

{00032731.DOCX;4}

Page -13-

and, as such, its claim is barred by the three-year limitations period. *See Curtis v. Kellogg &* Andelson, 73 Cal.App.4th 492, 503 (1999)  ("gravamen of the breach of contract and breach of fiduciary duty claims is the purported malpractice, the two-year statute of limitations applies."); *Stoll v. Superior Court,* 9 Cal.App.4th 1362, 1366–69 (1992) (plaintiff cannot circumvent statute of limitations applicable to legal malpractice claim by alleging cause of action for breach of fiduciary duty); *Mfrs. Life Ins. Co. v. Superior Court,* 10 Cal.4th 257, 283 (1995) (plaintiff cannot plead around absolute bar to relief by simply "recasting the cause of action").

### 3.    No Specific Facts Are Alleged to Toll the Limitations Period

The Ninth Circuit recognizes that "federal courts have repeatedly held that plaintiffs seeking to toll the statute of limitations on various grounds must have included the allegation in their pleadings." *Wasco Prods., Inc. v. Southwall Techs., Inc.,* 435 F.3d 989, 991 (9th Cir. 2006). Accordingly, "courts within the Ninth Circuit have granted motions to dismiss where the running of the statute of limitations is apparent on the face of the complaint and the plaintiff has failed to allege facts supporting equitable tolling or estoppel." *Wolf v. Travolta,* 2014 U.S. Dist. LEXIS 165513, at *8 (C.D. Cal. Nov. 24 2014)  (collecting cases).

"The doctrine of equitable estoppel, often referred to as fraudulent concealment, is based on the principle that a party should not be allowed to benefit from its own wrongdoing." *Estate of Amaro v. City of Oakland,* 633 F.3d 808, 813 (9th Cir. 2011). In *United States v. Wharton,* the Ninth Circuit laid out the criteria for equitable estoppel: (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the conduct to his injury. 514 F.2d 406, 412 (9th Cir. 1975).

To toll the limitations period on the basis of fraudulent concealment, Plaintiff was required to plead supporting facts with particularity. *Guerrero v. Gates,* 357

weintraub tobin chediak coleman grodin
law corporation

F.3d 911, 920 (9th Cir. 2004) (plaintiff's equitable estoppel defense to statute of limitations was barred where plaintiff "failed to plead with particularity any … fraudulent behavior"), *superseded* by *Guerrero*, 442 F.3d 697 (2006); *see also Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120-21 ("Under either California or federal authority, the plaintiff must plead with particularity the facts which give rise to the claim of fraudulent concealment" to toll the statute of limitation.); *Larson v. Northrop Corp.*, 21 F.3d 1164, 1173 (D.C. Cir. 1994) (holding "allegations of fraudulent concealment, which toll the statute of limitations, must meet the requirements of" Rule 9(b)). It did not.

Here, Plaintiff alleges in conclusory fashion that Lahoti "continued to string Mr. Lardas along for years, acknowledging Mr. Mr. Lardas' ownership, but never transferring the Domain Names back to [him]" and "on several occasions, [Lahoti] agreed to transfer the Domain Names into a joint account where Mr. Lardas would have access … but [Lahoti] inexplicably never followed through." (Complaint ¶¶ 24, 25.) Such general averments by Plaintiff are not sufficient to toll the limitations period. Rather, Plaintiff was required to allege with specificity the who, what, where, when and how of the alleged conduct purportedly giving rise to estoppel.[5] *Medina v. Microsoft Corp.*, 2014 U.S. Dist. LEXIS 71271, *15 (N.D. Cal. May 23, 2014) (holding that "[i]t is not enough for [plaintiff] to aver generally that '[n]umerous meetings and communications were held'; rather, he "must allege the 'who, what, where, *when*, and how' of the charged misconduct"). What specific

---

[5] Plaintiff also alleges that from the time Lahoti started transferring domains from Lardas' account to his own personal account, Lahoti disabled the parking monetization for the domains and blocked Lardas' ability to sell the domains. (Complaint ¶ 34.) Such alleged conduct, which would put Lardas on notice of a claim against Lahoti and trigger the running of the limitations period, is inconsistent with Lardas' general conclusions that Lahoti strung Lardas along and acknowledged Lardas' ownership of the domains. *See Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1177 (9th Cir. 2000) ("Fraudulent concealment necessarily requires active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent plaintiff suing in time.").

representations were made by Lahoti to Lardas, when, by what manner, and how did Lardas purportedly rely on such representations?

Plaintiff failed to allege specific facts necessary to toll the limitations period.

## B.   Plaintiff Has Not Adequately Pled a Claim for Conversion

In California, the elements of conversion are "(1) the plaintiff's ownership or right to possession of personal property, (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights, and (3) resulting damages." *Fremont Indemnity Co. v. Fremont General Corp.*, 148 Cal.App.4th 97, 119 (2007 ).

Here, Plaintiff alleges Lahoti "interfered with the Domain Names by taking possession of them and preventing Plaintiff from accessing them." (Complaint ¶ 42.) However, at least as to those domain names transferred after March 2014 when Lardas allegedly learned Lahoti was transferring the domains, Lardas impliedly assented to such transfers and the conversion claim fails. *Farrington v. A. Teichert & Son, Inc.*, 59 Cal.App.2d 468, 474 (1943) ("[T]he law is well settled that there can be no conversion where an owner either expressly or impliedly assents to or ratifies the taking, use or disposition of his property."); *Swingless Golf Club Corp. v. Taylor*, 679 F.Supp.2d 1060, 1068 (N.D. Cal. 2009) ("A plaintiff in a conversion action must also prove that it did not consent to the defendant's exercise of dominion.").

According to Plaintiff, Lahoti continued transferring domains after March 2014, through June 2014 and from December 2015 to the beginning of 2016. Yet, Lardas took no action to stop him. For example, Lardas did not change his passwords or lock Lahoti out of the account to prevent him from transferring more domain names. Indeed, there is not even an allegation in the complaint that Lardas told Lahoti to stop transferring the domains. Thus, Lardas impliedly assented to a significant portion of the transfers offered in support of the conversion claim.

### C.   Plaintiff Has Not Adequately Pled a Claim for Breach of Fiduciary Duty

Here, the complaint alleges that Plaintiff and Defendants were friends and, thus, "a fiduciary relationship existed." (Complaint ¶¶ 48-49.) However, California law requires more to establish the existence of a fiduciary relationship.

A fiduciary duty claim requires that: "(1) [defendant] owed a fiduciary duty to the party in question; (2) the duty was breached; and (3) the breach caused the harm suffered." *Swingless Golf Club Corp.*, 679 F.Supp.2d at 1072 (citing *First Interstate Bank of Arizona, N.A., v. Murphy, Weir and Butler*, 210 F.3d 983, 986 (9th Cir. 2000) ); *see also Graham-Sult*, 756 F.3d 724, 736 (9th Cir. 2014) .

"[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.3d 197, 221 (1983); *Wolf v. Super. Ct.*, 107 Cal.App.4th 25, 29 (2003) (A fiduciary duty "arises when confidence is reposed by one person in the integrity of another" and the latter "voluntarily accepts or assumes to accept the confidence...."). Also, "[t]he essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party." *Richelle L. v. Roman Catholic Archbishop*, 106 Cal.App.4th 257, 271 (2003).

Simply because Lahoti and Lardas were friends does not establish a fiduciary relationship between them. No facts show Lahoti "knowingly" undertook the obligations of a fiduciary. On October 9, 2012, Lardas sent Lahoti an unsolicited email, providing his accounts' passwords and asking Lahoti for a favor. Lahoti had no duty to pay the renewal fees, safeguard Lardas' passwords or accounts, or take

weintraub tobin chediak coleman tyrdin

any action whatsoever. Lahoti paid the renewal fees, but that did not create a fiduciary obligation to continue paying them; he could stop any time.

Similarly, no allegations support the conclusion that Lahoti was in a superior position to exert unique influence over Lardas, or that the parties were in unequal bargaining positions. Again, Lahoti did not ask Lardas for the passwords to his accounts; that information was thrust upon him by Lardas. Moreover, Lardas at all times retained control over his accounts. He could access them and monitor the domain names. He could change the accounts' passwords and lockout Lahoti if he so desired. The mere fact that Lahoti advanced renewal fees to help his one-time friend on the promise that he would be repaid (a promise Lardas did not honor), does not support the conclusion that they were in a fiduciary relationship.

**D.     Plaintiff Has Not Adequately Pled a Claim for Declaratory Relief**

On a motion to dismiss, the issue is "whether the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *Western Mining Council v. Watt*, 643 F.2d 618, 623-24 (9th Cir. 1981).

Here, Plaintiff "seeks a declaration and judgment that it is the rightful registrant and registered name holder of the Domain Names, and seeks an order of this Court transferring the Domain Names to Plaintiff." (Complaint ¶ 67.) Plaintiff's request, however, is inconsistent with its allegation that Lardas and Lahoti were "business partners." (Complaint ¶ 54.) Under California law, partners do not individually own partnership property; the partnership owns the property. *See* Cal. Corp. Code §§ 16501, 16203. Thus, based upon its allegation that Lardas and Lahoti were partners, Plaintiff cannot also claim it should be entitled to a declaration that it <u>alone</u> is the rightful registrant and holder of the domain names.

weintraub tobin chediak coleman grodin
law corporation

### E.    Plaintiff Has Not Adequately Pled a Claim for Bailment

*First*, Plaintiff was required to allege an express or implied-in-fact contract to state a claim for bailment – which it fails to do. *Whitcombe v. Stevedoring Servs. of Am.*, 2 F.3d 312 (9th Cir. 1993) (stating "California law generally defines a bailment as the delivery of a thing in trust for a purpose upon an implied or express contract") (internal citation omitted); *Earhart v. Callan*, 221 F.2d 160, 163 (9th Cir. 1955) (defining a bailment as "the relationship arising when personal property is delivered to another for some particular purpose upon an express or implied contract to redeliver the goods when the purpose has been fulfilled or to otherwise deal with the goods according to the bailor's directions"); *Evans v. United States*, 2017 U.S. App. LEXIS 4341, at *3-4 (Fed. Cir. Mar. 13, 2017) (affirmed 12(b)(6) motion to dismiss a bailment claim for failure to adequately allege a contract).

Plaintiff does not allege how and when an agreement was entered between Lardas and Lahoti, whether it was written or oral, express or implied, and the terms. Indeed, the only mention in the complaint of an agreement is that Lahoti agreed to "to maintain the Domain Names in Mr. Lardas's account for a period of an indefinite duration…." (Complaint ¶ 72.) This is woefully deficient. *See Iqbal*, 556 U.S. at 679 (Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth."; *id.* at 678 (In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted.) (cites omitted); *Mason v. Woodland Sav. & Loan Ass'n*, 254 Cal.App.2d 41, 44 (1967) (demurrer properly sustained where there was no allegation that parties settled on definite terms, essential for a binding contract); *Devereaux v. Harper*, 210 Cal.App.2d 519, 528 (1962) (demurrer sustained because terms of alleged agreement were "too indefinite").

*Second*, Plaintiff alleges on the one hand that Lahoti had no right to transfer the domain names out of Lardas' account (Complaint ¶ 75), while arguing on the

other that a bailment was created when such transfers occurred. (*Id.* ¶ 72.) This is insufficient to create a bailment – and is really just the alleged conversion claim under a different name. A bailment would require Lardas to either transfer the domain names into Lahoti's account himself, or expressly authorize Lahoti to transfer the domains. The claim fails for this reason as well. *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 974 (S.D. Cal. 2012) ("The Ninth Circuit, relying on California law, has defined bailment as 'the deposit of personal property with another, usually for a particular purpose.'") (citing *United States v. Alcaraz-Garcia*, 79 F.3d 769, 774 n. 11 (9th Cir. 1996)).

## V.   CONCLUSION

Based on the foregoing, Lahoti respectfully asks that the Court dismiss Plaintiff's complaint and each claim asserted therein pursuant to Rule 12(b)(6).

Dated: November 22, 2017          **weintraub | tobin**

By: _____
          Jacob C. Gonzales
          Attorneys for Defendant
          RAVINDRA KUMAR LAHOTI

# PROOF OF SERVICE

I am over the age of eighteen years, and not a party to this action; and I am employed in the County of Orange, California, in which county the within mailing occurred.  My business address is 23 Corporate Plaza Drive, #200, Newport Beach, CA 92660.

On *November 22, 2017,* I served a copy of the following documents: **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Persons or parties served:  **See Attached Service List**

[ ]    **(BY EXPRESS SERVICE CARRIER)** I deposited in a box or other facility regularly maintained by OVERNITE EXPRESS/FEDERAL EXPRESS an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents a copy of the above-referenced document, together with an unsigned copy of this declaration, in an envelope designated by the said express service carrier, with delivery fees paid or provided for, addressed to the above-referenced parties.

[**XX**]  **(BY ELECTRONICALLY)** filing the foregoing document with the Clerk of the United States District Court, Central District, using its ECF System, which electronically notifies the persons on the attached service list at the email addresses registered with the ECF System.

I declare under the law of the United States of America that the foregoing information contained in the Proof of Service is true and correct. I further declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on *November 22, 2017,* at Newport Beach, California.

/s/ **Liz H. Graham**
Liz H. Graham

## Service List

| | |
|---|---|
| Brett E. Lewis<br>Justin Mercer<br>LEWIS & LIN, LLC<br>45 Main Street, Suite 608<br>Brooklyn, NY 11201<br>Telephone: (718) 243-9323<br>Facsimile: (718) 243-9326<br>Email: brett@iLawco.com<br>　　　　Justin@iLawco.com | **ATTORNEYS FOR PLAINTIFF**<br>(***Pro Hac Vice***) |
| Dylan Ruga (SBN 235969)<br>Ji-In Lee Houck (SBN 280088)<br>STALWART LAW GROUP<br>1100 Glendon Ave., 17th Floor<br>Los Angeles, CA 90024<br>Telephone: (310) 954-2000<br>Email: dylan@stalwartlaw.com<br>　　　　jiin@stalwartlaw.com | **ATTORNEYS FOR PLAINTIFF** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

weintraub **tobin** chediak coleman grodin
law corporation